[Sac. No. 5281. In Bank.—August 23, 1940.]

DAVID J. BADAL, Respondent, v. ISAAC ADAMS et al., Appellants.

Hjelm & Hjelm for Appellants.

Wilcox & Rodin and Cleveland R. Wright for Respondent.

THE COURT.—Plaintiff, a judgment creditor of defendants Isaac and Sarah Adams, brought this action to subject

to the lien of his judgment certain real property owned by said defendants, the record title to which had been transferred to their son, defendant Albert Adams, by means of an alleged fraudulent foreclosure and sale. Trial of the cause resulted in a decree in favor of plaintiff from which defendants have appealed. Their principal contention is that the evidence is insufficient to support the judgment. We are of the opinion that the evidence is sufficient.

On July 11, 1931, plaintiff secured a judgment against Isaac and Sarah Adams for $1,091.85. He renewed this judgment in November, 1936, for the sum of $1508.64, and at about the same time he became the assignee of a $214 judgment against them. Abstracts of these judgments were recorded, and the judgments thus became liens upon real property owned by the judgment debtors in Stanislaus County.

The only real property standing of record in the names of Isaac and Sarah Adams in 1931 was their ranch home, upon which they had resided for many years. They had previously executed a deed of trust on this property to the People's State Bank of Turlock, and on February 15, 1933, they renewed the encumbrance, giving the bank a new deed of trust in the sum of $5,000. Their actual indebtedness, however, exceeded that amount by several thousand dollars, and the bank was anxious to realize something from the loan. On January 12, 1934, an effort was made to refinance the obligation through the Federal Land Bank of Berkeley, but the application for a loan was rejected when a title search disclosed the presence of plaintiff's judgment liens. The property was then sold under the power contained in the deed of trust, and was purchased by the bank at the trustee's sale for $7,400, which was approximately the amount owing the bank by Isaac and Sarah Adams. The trustees' deed to the bank was dated February 26, 1934. Thereafter the bank executed a deed to Albert Adams dated March 12, 1934. The consideration for the conveyance to Albert was paid from the proceeds of a $5,000 loan obtained on the property from the Federal Land Bank under the file number of the prior loan application made by Isaac and Sarah. The Federal Land Bank required Isaac and Sarah to join with Albert in signing two promissory notes evidencing the loan, but the deeds of trust given to secure the notes were signed by Albert alone. The trustees' deed to the People's Bank, the deed from it to Albert and the deeds of trust from Albert to

the Federal Land Bank, were all recorded on June 23, 1934. The People's Bank did not make any entry crediting the account of Isaac and Sarah with the payment of $5,000 on their indebtedness until July 19, 1934. The president of the People's Bank testified that they knew when the foreclosure proceeding was instituted that the bank had a prospective purchaser in Albert. Isaac and Sarah continued to reside at the ranch home, and there was no change of possession or control of the property. Witnesses testified to certain statements made by Isaac and Albert subsequent to the transfer of title to Albert, which indicated no change of ownership to Albert was intended. One witness testified that in 1935 he asked Albert what he would sell the property for, and that Albert replied: "I don't know, I don't know whether my father wants to sell the property or what he would want for it. I'll have to write to him and find out"; and the same witness testified that on another occasion Albert stated that some people with a judgment against his father were trying to get the property, and added: "it has been fixed so they cannot get the property". Another witness testified that in January, 1935, Isaac stated in response to a question concerning the ownership of the property, "I am the owner."

The effect of the foreclosure and the purchase of the property by the People's Bank and of the subsequent sale to Albert was to clear the record title, and thus make it possible to secure the refinancing of the $5,000 encumbrance. The lower court found that at all times Albert acted solely on behalf of his parents and not for himself; that he personally paid no consideration for the conveyance of the property and was not a *bona fide* purchaser thereof; that the payment was made and title taken in his name as a dummy for his parents for the purpose of defrauding plaintiff and defeating plaintiff's judgment liens; and that although there was a change in the record title of the property there was actually no change of ownership. The decree adjudged that Albert had no right, title or interest in the property except as trustee for his parents who were the owners in fee, and it directed him to convey the property to them subject only to the deeds of trust in favor of the Federal Land Bank and the plaintiff's judgment liens subordinate thereto.

The express finding that Albert was a party to the original fraud completely disposes of his contention that he obtained a good title by transfer from the bank.

There are no other questions which merit discussion.

The judgment is affirmed.